UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MELINDA V.,

                              Plaintiff,

                                                        5:21-CV-0743
v.                                                      (GTS)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                 OF COUNSEL:

BINDER, BINDER LAW FIRM                      CHARLES E. BINDER, ESQ.
  Counsel for Plaintiff
485 Madison Avenue, Suite 501
New York, New York 10022

SOCIAL SECURITY ADMINISTRATION               RONALD W. MAKAWA, ESQ.
OFFICE OF GENERAL COUNSEL                     Special Assistant U.S. Attorney
  Counsel for Defendant
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

GLENN T. SUDDABY, United States District Judge

## DECISION and ORDER

Currently before the Court, in this action filed by Melinda V. ("Plaintiff") against the

Commissioner of Social Security ("Defendant" or "Commissioner") seeking Social Security

benefits, are the parties' motions for judgment on the pleadings.  (Dkt. Nos. 11, 16.)  For the

reasons set forth below, the Court affirms Defendant's decision and dismisses Plaintiff's

Complaint.

## I.       RELEVANT BACKGROUND

### A.    Relevant Facts

Plaintiff was born in 1981, making her 37 years old at date her application was filed. Plaintiff reported having a high school education and past work experience as a call center representative, a deli associate, a production helper, a telephone operator, a companion, and a nurse's aide.  Plaintiff alleges disability due to fibromyalgia, diabetes mellitus with neuropathy, and edema.

### B.    Relevant Procedural History

Plaintiff applied for Supplemental Security Income ("SSI") on September 10, 2018, with an alleged disability onset date of December 31, 2014.  Plaintiff's application was initially denied on January 29, 2019, and subsequently denied again (on a request for reconsideration) on March 20, 2019, after which she timely requested a hearing before Administrative Law Judge ("ALJ") Michael Lehr on May 16, 2019.

Plaintiff appeared at a hearing before ALJ Michael A. Lehr on April 30, 2020.  On September 28, 2020, the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security Act.  (T. 11-24.)[1]  On April 27, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)

### C.    The ALJ's Decision

Generally, in his decision, the ALJ made the following eleven findings of fact and conclusions of law.  (T.11-24.)  First, the ALJ found that Plaintiff meets the insured status

---

[1]     The Administrative Transcript is found at Dkt. No. 6.  Citations to the Administrative Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the page numbers assigned by the Court's CM/ECF electronic filing system.

requirements under the Social Security Act through September 30, 2017. (T. 14)  Second, the

ALJ found that Plaintiff has not engaged in substantial gainful activity since December 30, 2014,

the alleged onset date. (*Id*.)  Third, the ALJ found that Plaintiff has the following severe

impairments pursuant to 20 C.F.R. §§ 404.1520(c) and 416.920(c): diabetes mellitus with

neuropathy, fibromyalgia, obesity, and anxiety. (*Id*.)   Fourth, the ALJ found that Plaintiff does

not have an impairment or combination of impairments that meets or medically equals the

severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, App. 1 (the "Listings").

(T. 14-16.)  Fifth, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to

perform sedentary work as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a), with certain

limitations. (T. 17-22.)  Sixth, the ALJ found that Plaintiff is unable to perform any past relevant

work (i.e., as a call center representative, deli associate, production helper, telephone operator,

companion, or nurse's aide) for purposes of 20 C.F.R. §§ 404.1565 and 416.965. (T. 22.)

Seventh, the ALJ found that Plaintiff was born in 1981 and was 33 years old on the alleged

disability onset date, which is defined as a younger individual age 18-49 pursuant to 20 C.F.R. §§

404.1563 and 416.963. (T. 23.) Eighth, the ALJ found Plaintiff has at least a high school

education for purposes of  20 C.F.R. §§ 404.1564 and 416.964. (*Id*.)  Ninth, the ALJ found that

the transferability of jobs skills is not material to the determination of disability because the use

of the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not

disabled" (whether or not Plaintiff has transferable job skills). (*Id*.)  Tenth, the ALJ found that,

considering Plaintiff's age, education, work experience, and residual functional capacity, there

are jobs that exist in significant numbers in the national economy that the Plaintiff can perform

for purposes of 20 C.F.R. §§ 404.1569, 404.1569(a), 416.969, and 416.969(a). (T. 23-24.)

3

Eleventh, the ALJ found that Plaintiff has not been under a disability, as defined in the Social

Security Act, from December 31, 2014 through September 28, 2020 (the date of the ALJ's final

decision) for purposes of 20 C.F.R. §§ 404.1520(g) and 416.920(g).  (T. 24.)

     **D.**    **The Parties' Briefing on Their Motions**

          **1.**    **Plaintiff's Motion for Judgment on the Pleadings**

     Generally, in her memorandum of law, Plaintiff asserts two arguments. (Dkt. No. 11, at

21-32 [attaching pages "20" through "31" of Plf.'s Brief].)  First, Plaintiff argues that, in

determining her physical RFC, the ALJ failed to properly evaluate the medical opinions of her

treating doctor, board-certified internist Dr. Ifechukwude Ojugbeli, M.D. (e.g., by failing to

articulate how he considered and evaluated Dr. Ojugbeli's medical opinions based on the factors

of supportability, consistency, and his relationship with Plaintiff).  (Dkt. No. 11, at 21-29

[attaching pages "20" through "28" of Plf.'s Brief].)

     More specifically, Plaintiff asserts the following seven arguments, among others: (a) the

ALJ erred by discounting Dr. Ojugbeli's medical opinions because he did not understand the

rules and regulations governing Social Security disability adjudications (which is not relevant to

his medical opinions regarding Plaintiff's functioning); (b) the ALJ erred by discounting Dr.

Ojugbeli's medical opinions because his treatment records did not reflect specific work-related

limitations, particularly her need to elevate her legs to reduce pain and swelling (which would be

unusual for a treating medical source to do), despite conceding that Dr. Ojugbeli's opinions were

"supported with multiple examination notes"; (c) the ALJ erred by not finding Dr. Ojugbeli's

medical opinions more persuasive in light of the fact that his supporting findings are confirmed

by (and consistent with) the longitudinal treatment records from the period at issue; (d) the ALJ

erred by discounting Dr. Ojugbeli's medical opinions based on Plaintiff's sporadic non-compliance with treatment, given that such non-compliance was not willful and was limited to a few occasions (e.g., not eating more regularly, not wearing her diabetic shoes "all the time," and not wearing the wrong kind of compression stockings); (e) the ALJ erred by discounting Dr. Ojugbeli's medical opinions based on the fact that Plaintiff has not required hospitalizations for her conditions, and the fact that she has had some (non-sustained) response to treatment (which must be instead viewed in light of the overall diagnostic record); (f) the ALJ erred by discounting Dr. Ojugbeli's medical opinions based on Plaintiff's ability to engage in some activities of daily living, because the fact that she has been able to engage in some activities of daily living in no way contradicts the limitations described for her by Dr. Ojugbeli; and (g) finally, the ALJ erred by not citing any specific medical facts nor even persuasive non-medical evidence supporting the (precise) physical RFC that he found for Plaintiff. (*Id.*)

Second, Plaintiff argues that the ALJ failed to properly evaluate her subjective statements in light of the required factors, but merely found her statements regarding the intensity, persistence and limiting effect of her symptoms not entirely consistent with the medical evidence and other evidence in the record for unexplained or insufficient reasons (e.g., non-compliance with prescribed treatment, the lack of work-related limitations recorded in Dr. Ojugbeli's treatment notes, the fact that physical examinations document both normal and abnormal findings, the fact that Plaintiff's fibromyalgia symptoms were described as "stable" with treatment, the fact that Plaintiff had experienced some response to treatment for her migraines, and the fact that her allegations are inconsistent with her activities of daily living). (*Id.* at 30-32 [attaching pages "29" through "31" of Plf.'s Brief].)

5

More specifically, Plaintiff asserts the following four arguments: (a) any non-compliance with treatment by Plaintiff was limited to a few, sporadic incidents; (b) the lack of work limitations recorded in Dr. Ojugbeli's treatment notes is not surprising given that it would be unusual for a treating medical source to record such work limitations (and, in any event, the ALJ conceded that Dr. Ojugbeli's opinions were "supported with multiple examination notes"); (c) although Plaintiff's fibromyalgia condition "stabilized" with treatment, describing a patient as "stable" only means that she is no better or no worse, not that she is able to perform activities at a particular exertional level or work a full-time job on a sustained basis; and (d) again, the fact that Plaintiff has been able to engage in some activities of daily living in no way contradicts the limitations described for her by Dr. Ojugbeli.  (*Id*.)

### 2.   Defendant's Motion for Judgment on the Pleadings

Generally, in her memorandum of law, Defendant argues that Plaintiff has not demonstrated that the ALJ's RFC determination is unsupported by substantial evidence for three reasons.  (Dkt. No. 16, at 4-20 [Def.'s Brief].)

First, Defendant argues, the ALJ was not required to rely on a particular medical opinion in crafting his RFC determination.  (*Id*. at 4-6.)  Rather, Defendant argues, the ALJ has the responsibility of reviewing all the evidence before him, resolving inconsistencies, and making a determination consistent with the evidence as a whole.  (*Id*. at 4-5.)  Here, Defendant argues, the ALJ properly relied on objective medical evidence, Plaintiff's reports of daily activities, and partially on medical opinion evidence in making his findings.  (*Id*. at 5 [citing T. 14-24].)  Plaintiff's disagreement with the ALJ's supportable analysis, Defendant argues, does not demonstrate any error.  (*Id*. at 6.)

Second, Defendant argues, the ALJ properly found that the opinion of treating physician Ifechukwude Ojugbeli, M.D., was not persuasive. (*Id*. at 6-15.)  Although the ALJ must explain how persuasive he or she finds a medical opinion based on the factors of supportability and consistency, Defendant argues, he or she is generally not required to explain how he considered the other remaining factors. (*Id*.)  Here, Defendant argues, the ALJ properly rejected Dr. Ojugbeli's opinions (despite the fact that he had a treating relationship with Plaintiff and his opinions were "supported by multiple examination notes") on two grounds: (1) those opinions' lack of supportability by (a) his own treatment notes (and the treatment notes of his physician's assistant) reflecting consistently normal findings on examination of Plaintiff's musculoskeletal and neurological systems from 2016 through 2020 (including her lower extremities), (b) his own treatment notes recommending treatment with medication (antibiotics and Benadryl), not leg elevation, when Plaintiff complained of leg pain/swelling, and (c) his own treatment notes reflecting improvement in Plaintiff's leg cramps and knee pain despite not going to physical therapy; and (2) those opinions' lack of consistency with (a) other treatment providers' assessments reflecting consistently normal findings on examination of Plaintiff's musculoskeletal and neurological systems from 2016 through 2020, (b) the multiple portions of the record reflecting Plaintiff's inconsistent compliance with diabetes treatment, wearing compression stockings, and wearing her diabetic shoes, (c) the objective record evidence reflecting a general lack of sustained hospitalizations for diabetes, lack of inpatient or emergency psychiatric treatment and lack of sustained treatment with therapy or counseling, and her improvement in headaches with treatment and medication), and (d) the significant record evidence reflecting Plaintiff's ability to continue engaging in various activities of daily living. (*Id*.)

Third, Defendant argues, the ALJ properly assessed Plaintiff's subjective statements.  (*Id*. at 16-19.)  Defendant argues that the ALJ properly found that these statements were not entirely consistent with the record evidence for several reasons, including the following: (1) the fact that the record reflects Plaintiff's improvement with treatment; (2) the fact that the record reflected normal findings on examination; and (3) the fact that Plaintiff remained able to engage in a range of daily activities, both according to her own statements and the record evidence.  (*Id*. at 16 [citing T. 18-20].)  In fact, Defendant argues, this entire challenge by Plaintiff (to the ALJ's assessment of her subjective statements) is so reliant on her prior arguments (regarding the ALJ's evaluation of Dr. Ojugbeli's opinion) and so undeveloped that it should be deemed waived and not considered.  (*Id*. at 16-17.)  In any event, Defendant argues, the ALJ's consideration of Plaintiff's fibromyalgia as "stable" (which is entirely permissible under the case law) is supported by record evidence that does not support Plaintiff's subjective statements that her conditions caused disabling-level symptoms and limitations.  (*Id*. at 17-18.)  Finally, Defendant argues, although Plaintiff points to some evidence that could support her positions, she essentially asks this Court to re-weigh the evidence in her favor; and the Court cannot and should not substitute its interpretation of the record for the ALJ's interpretation, because the record contains support for the ALJ's findings.  (*Id*. at 18-19.)

## II.    APPLICABLE LEGAL STANDARDS

### A.    Standard of Review

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs*., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if the

correct legal standards were not applied, or it was not supported by substantial evidence.  *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983), *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).  "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a *de novo*

9

review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

**B.      Standard to Determine Disability**

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. §§ 404.1520, 416.920.

The Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987).  The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently
> engaged in substantial gainful activity.   If he is not, the
> [Commissioner] next considers whether the claimant has a "severe
> impairment" which significantly limits his physical or mental ability
> to do basic work activities.   If the claimant suffers such an
> impairment, the third inquiry is whether, based solely on medical
> evidence, the claimant has an impairment which is listed in Appendix
> 1 of the regulations.  If the claimant has such an impairment, the
> [Commissioner] will consider him disabled without considering
> vocational factors such as age, education, and work experience; the
> [Commissioner] presumes that a claimant who is afflicted with a
> "listed" impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the fourth
> inquiry is whether, despite the claimant's severe impairment, he has
> the residual functional capacity to perform his past work.  Finally, if
> the claimant is unable to perform his past work, the [Commissioner]
> then determines whether there is other work which the claimant could
> perform.  Under the cases previously discussed, the claimant bears the
> burden   of   the   proof   as   to   the   first   four   steps,   while   the
> [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *accord McIntyre v. Colvin*, 758 F.3d 146,

150 (2d Cir. 2014).  "If at any step a finding of disability or non-disability can be made, the SSA

will not review the claim further."  *Barnhart v. Thompson*, 540 U.S. 20, 24 (2003).

**III.     ANALYSIS**

**A.      Whether, In Determining Plaintiff's Physical RFC, the ALJ Failed to
         Properly Evaluate the Medical Opinions of Plaintiff's Treating Doctor,**

10

**Ifechukwude Ojugbeli, M.D.**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's brief. *See, supra,* Part I.D.2. of this Decision and Order. To those reasons, the Court adds two brief points, which are meant to supplement and not supplant those reasons.

First, the Court agrees with Defendant that the ALJ was not required to rely on a particular medical opinion in crafting his RFC determination,[2] and that in making his findings he properly relied on the following three things: (1) the objective medical evidence (e.g., Plaintiff's history of and treatment for diabetes, edema, fibromyalgia, headaches and obesity); (2) Plaintiff's reports of daily activities (e.g., showering, grooming, dressing, cooking, cleaning, doing chores, caring for her pets, playing games on her phone, watching TV, listening to the radio, reading, shopping, running errands, driving, using public transportation, crocheting, and getting coffee "sometimes"); and (3) partially on medical opinion evidence (e.g., the medical findings of the State agency physical consultants, and the State agency psychological consultants). (T. 14-24.)

---

[2]      *See, e.g., Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109-110 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when 'the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.' . . . Here, the treatment notes were in line with the ALJ's RFC determinations."); *Corbiere v. Berryhill*, 760 F. App'x 54, 56 (2d Cir. Jan. 23, 2019) (affirming the Commissioner's final decision despite the lack of a medical opinion expressly discussing plaintiff's physical limitations and relying on plaintiff's treatment notes to formulate the RFC); *Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. Jan. 8, 2017) ("Where . . . the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity, . . . a medical source statement or formal medical opinion is not necessarily required . . . .") (internal citations and quotation marks omitted); *Tankisi v. Comm'r Soc. Sec.*, 521 F. App'x 29, 33-34 (2d Cir. 2013) (finding that, where "the record contains sufficient evidence from which an ALJ can assess . . . residual functional capacity," a medical source statement or formal medical opinion is not necessarily required).

Second, the Court agrees with Defendant that an ALJ is not required to explain how he or she considered the "relationship with the claimant" factor,[3] but that, in any event, ALJ Lehr did so: he acknowledged Dr. Ojugbeli's "had a treatment relationship with Plaintiff" that was extensive enough to produce "multiple examination notes" before finding that the treatment-relationship factor was nonetheless outweighed by the supportability and consistency factors, which he explicitly discussed. *See, supra,* Part I.D.2. of this Decision and Order (summarizing Defendant's explanation of that discussion). The Court acknowledges that the ALJ's discussion of these factors appears limited to one page of his decision; however, the Court finds that Defendant has accurately explained the ALJ's discussion of these factors at pages 8 through 15 of her brief (citing the portions of the record to which the ALJ was referring). (*Compare* T. 21 *with* Dkt. No. 16, at 8-15 [Def.'s Brief].)

For all of these reasons, the Court rejects the first challenge asserted by Plaintiff.

**B.    Whether the ALJ Failed to Properly Evaluate Plaintiff's Subjective Statements in Light of the Required Factors**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's brief. *See, supra,* Part I.D.2. of this Decision and Order. To

---

[3]    *See* 20 C.F.R. § 404.1520c(b)(2) ("We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record."); *see, e.g., Vecchio v. Comm'r of Soc. Sec.,* 20-CV-8105, 2021 WL 8013772, at *11 (S.D.N.Y. Dec. 1, 2021) ("As to the three remaining factors—relationship with the claimant, specialization, and 'other'–the ALJ is required to consider, but need not explicitly discuss, them in determining the persuasiveness of the opinion of a medical source."), report-recommendation adopted by 2022 WL 873175 (S.D.N.Y. March 24, 2022); *Mark K. v. Comm'r of Soc. Sec.*, 20-CV-0833, 2021 WL 4220621, at *7 (W.D.N.Y. Sept. 16, 2021) ("The ALJ correctly refused to defer or give specific evidentiary weight to any medical opinion . . . , including that of Dr. Feldman. Secondary factors such as a treatment relationship is one that the ALJ need not articulate how it was applied . . . .").

those reasons, the Court adds two brief points, which are meant to supplement and not supplant those reasons.

First, the Court agrees with Defendant the ALJ properly found that Plaintiff's subjective statements were not entirely consistent with the record evidence for several reasons: (1) the fact that the record reflects Plaintiff's improvement in various of her conditions with treatment (e.g., her migraine headaches have improved due to Botox injections and medications, her fibromyalgia has stabilized due to even sporadic rheumatology treatments, an abscess on her thigh and fibromatosis on her foot improved with surgical interventions, and her obesity has improved somewhat after being instructed to diet and exercise); (2) the fact that the record reflects that Plaintiff has not been consistent with her treatment for fibromyalgia (undergoing rheumatology treatment generally at a rate of only one appointment every two to six months), and her treatment for diabetes (e.g., "never really" having her legs elevated, not wearing her compression stockings "in a long time,"[4] not wearing her diabetic shoes "all the time,"[5] eating more than "once or twice a day"[6]); (3) the fact that the record reflected normal objective findings on examination of Plaintiff's musculoskeletal and neurological systems from 2016 through 2020

---

[4]     (T. 1499 [cited as Ex. 14F at 96 in ALJ's decision].)

[5]     (T. 1537 [cited as Ex. 15F at 15 in ALJ's decision].)

[6]     (T. 644 [cited as Ex. 1F at 275 in ALJ's decision].)

by both Dr. Ojugbeli[7] and other treatment providers during the same period[8]; and (4) the fact that Plaintiff has remained able to engage in a range of daily activities (the long list of which is recited above in Part III.A. of this Decision and Order).  (T. 18-20.)

Second, and finally, the Court agrees with Defendant that the ALJ's consideration of Plaintiff's fibromyalgia as "stable" was entirely permissible under the relevant case law,[9] and is supported by record evidence.[10]

For all of these reasons, the Court rejects the first challenge asserted by Plaintiff.

**ACCORDINGLY**, it is

**ORDERED** that the final decision of Defendant is **AFFIRMED**; and it is further

---

[7]       (T. 999, 1003, 1012, 1016, 1049, 1054, 1068, 1073, 1081, 1098, 1122, 1127-28, 1134, 1143, 1157, 1161, 1164, 1190-91, 1216, 1220-21, 1226-27, 1230, 1233-34, 1238, 1244, 1254, 1259, 1267, 1285, 1306, 1311-12, 1316, 1323, 1337, 1341, 1353, 1630, 1674, 1685-86, 1788-89, 1797-98, 1809, 1813-14, 1852, 1858, 1861-62, 1873, 1877, 1888, 1892.)

[8]       (T. 623, 625, 645, 673, 703, 706-07, 888, 895-96, 976, 980, 1059, 1375, 1536, 1581, 1590, 1720, 1751-52, 1760, 1805, 1827, 1935, 2050, 2060-61, 2076.)

[9]       To the four cases cited on page 17 of Defendant's brief (Dkt. No. 16, at 17), the Court adds only two cases. *See Rutherford v. Schweiker*, 685 F.2d 60, 61 (2d Cir. 1982) (affirming a district court decision relying on a psychiatrist's report stating that, although the plaintiff had a history of blackouts precipitated by alcoholism, "his symptoms had stabilized during the preceding year"); *Faith Grace P. v. Saul*, 18-CV-0781, 2019 WL 4305484, at *7 (N.D.N.Y. Sept. 11, 2019) (Stewart, M.J.) ("Plaintiff objects to the ALJ's reliance on a February 2, 2012 letter discussing Plaintiff's fibromyalgia and characterizing her condition as 'stable.' Plaintiff contends that 'the ALJ seems unconcerned with the proper meaning of the term 'stable' when applied to medical conditions,' . . . and states that this characterization in no way undermines Plaintiff's claims regarding the severity of her fibromyalgia-related pain. . . . The ALJ did not find to the contrary and noted only that this factor, in combination with a number of others, supported the conclusion that Plaintiff's subjective complaints were not fully supported by the record."). The Court notes that Plaintiff does not cite a case for the point of law (or even argue) that ALJ Lehr improperly interpreted the medical term "stable."  (*See generally* Dkt. No. 11, at 32 [attaching page "31" of Plf.'s Brief].)

[10]       (T. 1249, 1330, 1658, 1669.)

      **ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is <u>**DISMISSED**</u>.

Dated: September 13, 2022
      Syracuse, New York

                                  Glenn T. Suddaby
                                  U.S. District Judge

15